1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

7
8
9
10
11
12

ARIE ROBERT REDEKER,

        Petitioner,

vs.

D.W. NEVEN, *et al.*,

        Respondents.

Case No. 2:12-cv-00397-APG-GWF

**ORDER REGARDING MOTION TO DISMISS**

13
14
15
16

This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner represented by counsel. Before the Court is respondents' motion to dismiss the second amended petition. (ECF No. 32).

17

## I. Procedural History

18
19
20
21
22
23
24
25

Petitioner was bound over, after a preliminary hearing, and on December 10, 2002, the State of Nevada filed an information in the Eighth Judicial District Court for the State of Nevada, charging petitioner with murder with the use of a deadly weapon. (Exhibit 6).[1] On December 19, 2002, the State filed a notice of intent to seek the death penalty, which alleged two different aggravating circumstances: (1) petitioner was under a sentence of imprisonment at the time of the murder; and (2) petitioner had a prior conviction for a felony (arson) involving the use or threat of violence to the person of another. (Exhibit 7). The Nevada Supreme Court granted a writ of mandamus challenging the use of petitioner's prior arson charge as a prior conviction for a crime of violence. (Exhibits 82

26

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 18-22.

& 83). The Nevada Supreme Court, in a published opinion, held that the State's notice of intent to seek the death penalty failed to allege specific facts showing that petitioner's arson conviction involved the use or threat of violence to the person of another. (Exhibit 82; *Redeker v. Eighth Judicial Dist. Court of State of Nevada ex re. County of Clark*, 122 Nev. 164, 127 P.3d 520 (2006). The State proceeded to trial seeking the death penalty against petitioner based on the remaining "under sentence of imprisonment" aggravating circumstance.[2] (Exhibit 105).

The case proceeded to trial on July 10, 2006, and continued through July 20, 2006. (Exhibits 119-137). The jury returned a verdict finding petitioner guilty of second-degree murder with the use of a deadly weapon. (Exhibit 137). The state district court sentenced petitioner on August 30, 2006, to life in prison with the possibility of parole after a minimum of ten years served, plus an equal and consecutive term of life with the possibility of parole after a minimum of ten years served for the use of a deadly weapon. (Exhibits 139 & 140). The judgment of conviction was filed on September 7, 2006, and a superceding judgment of conviction on October 6, 2006. (Exhibits 140 & 145).

Petitioner filed a notice of appeal on September 22, 2006. (Exhibit 141). Through counsel, petitioner filed an opening brief on July 24, 2007, raising a number of issues. (Exhibit 152). On November 17, 2008, the Nevada Supreme Court issued an order affirming petitioner's conviction. (Exhibit 159).

On December 18, 2008, petitioner filed a petition for rehearing. (Exhibit 160). The Nevada Supreme Court issued an order denying rehearing on January 21, 2009. (Exhibit 161). Remittitur issued on February 17, 2009. (Exhibit 162).

Petitioner filed a post-conviction habeas petition in the state district court on February 16, 2010. (Exhibit 174). Petitioner filed a memorandum of points and authorities to supplement the petition on March 5, 2010. (Exhibit 175). On August 20, 2010, the state district court held an

---

[2] Petitioner was on probation at the time he committed the crime. (Exhibit 7).

2

1    evidentiary hearing on the petition. (Exhibit 183). On September 7, 2010, the state district court
2    issued its findings of fact, conclusions of law, and order denying the state habeas petition. (Exhibit
3    184).

4            Petitioner filed a notice of appeal from the denial of his state habeas petition. (Exhibit 186).
5    On March 4, 2011, petitioner filed his opening brief on appeal from the denial of his post-conviction
6    habeas petition. (Exhibit 199). On March 7, 2012, the Nevada Supreme Court issued an order
7    affirming the denial of the post-conviction habeas petition. (Exhibit 204). Petitioner filed a motion
8    for rehearing. (Exhibit 205). On May 9, 2012, Nevada Supreme Court denied the motion for
9    rehearing. (Exhibit 206). Remittitur issued on June 4, 2012. (Exhibit 207).

10           Petitioner dispatched his federal habeas petition to this Court on March 8, 2012. (ECF No.
11   1–1, at p. 1). On March 21, 2012, this Court directed the Clerk to file the petition, directed
12   respondents to file a response to the petition, and denied petitioner's request for the appointment of
13   counsel. (ECF No. 7). Upon reconsideration, by order filed May 1, 2012, the Court granted
14   petitioner's request for the appointment of counsel and appointed the Federal Public Defender to
15   represent petitioner in these federal habeas proceedings. (ECF No. 14). On July 12, 2012, the Court
16   entered an order directing counsel to file an amended petition within 90 days. (ECF No. 16).

17           On August 8, 2012, through counsel, petitioner filed a first amended petition. (ECF No. 17).
18   Concurrently, petitioner filed exhibits to the first amended petition. (ECF Nos. 17-22; Exhibits 1-
19   220). Also on August 8, 2012, petitioner filed a motion for leave to file a second amended petition.
20   (ECF No. 23). In the motion to amend, petitioner explained that he filed the first amended petition
21   "to present timely notice of the factual basis of all his potential claims," citing *Pace v. DiGuglielmo*,
22   544 U.S. 408, 416 (2005) (noting that a petitioner concerned about the statute of limitations might
23   file a "protective petition" in federal court) and *Mayle v. Felix*, 545 U.S. 644 (2005) (holding that
24   claims raised in a subsequent, untimely petition may "relate back" to claims and facts raised in an
25   original, timely petition). (ECF No. 23, at p. 2). The Court granted petitioner's motion for leave to

26
                                                    3

1 | file a second amended petition. (ECF No. 25). Through counsel, petitioner filed the second
2 | amended petition on January 18, 2013. (ECF No. 28).

3 | Respondents have filed a motion to dismiss the second amended petition. (ECF No. 32).
4 | Concurrent with the motion to dismiss, respondents filed additional exhibits consisting of portions of
5 | the state court record that were not included in petitioner's exhibits. (ECF No. 33, Exhibits 221-
6 | 247). Petitioner filed an opposition to the motion to dismiss. (ECF No. 39). Respondents have filed
7 | a reply. (ECF No. 40).

8 | **II. Discussion**

9 | Respondents argue that the Court should dismiss the second amended petition (SAP) for the
10 | following reasons: (1) the SAP incorporates by reference to other documents; (2) the SAP is
11 | untimely and does not relate back to the original petition; (3) some claims in the SAP are
12 | unexhausted; (4) some claims in the SAP are barred by *Stone v. Powell,* 428 U.S. 465, 495 (1976);
13 | (5) one ground in the SAP is procedurally defaulted; (6) various grounds in the SAP do not state
14 | cognizable claims for habeas relief; and (7) some claims in the SAP are moot. (ECF No. 32).

15 | **A. Incorporation by Reference**

16 | Respondents argue that the second amended petition (SAP) incorporates by reference various
17 | legal and factual arguments from the state court record. Respondents argue that petitioner's
18 | incorporation by reference is improper under Rule 2(c) of the Rules Governing 2254 Cases in the
19 | United States District Courts, which requires that each petition must specify all grounds for relief
20 | and state the facts supporting each ground. Respondents specifically complain that petitioner
21 | incorporates by reference to state court documents at pages 9, 11-13, 16, 20-25, 27, and 29-31 of the
22 | SAP.

23 | The Court has reviewed the SAP. At the pages identified by respondents (pp. 9, 11-13, 16,
24 | 20-25, 27, and 29-31) petitioner incorporates by reference portions of his opening brief on direct
25 | appeal (Exhibit 152), his reply brief on direct appeal (Exhibit 156), the Nevada Supreme Court's

26

4

order of affirmance on direct appeal (Exhibit 159), the memorandum of points and authorities in support of petitioner's post-conviction state habeas petition (Exhibit 175), his opening brief on appeal from the denial of the post-conviction state habeas petition (Exhibit 199), and his reply brief on appeal from the denial of his post-conviction state habeas petition (Exhibit 202). Each instance of incorporation by reference appears at the beginning of each ground of the federal habeas petition, and is followed by petitioner's contentions, including other appropriate citations to the state court record. (ECF No. 28). The Court further notes that all of the documents that are incorporated by reference in the SAP are exhibits attached to the first amended petition, consisting of the state court record, which were appropriately filed in this action. (Exhibits at ECF Nos. 18-22).

Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure: "A copy of a written instrument that is an exhibit to the pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts provides that: "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." As such, Rule 10(c) of the Federal Rules of Civil Procedure applies to exhibits to a federal habeas petition. Moreover, in *Dye v. Hofbauer*, 546 U.S. 1, 4 (2005), the United States Supreme Court made clear that Rule 10(c) applies to federal habeas corpus proceedings. In *Dye v. Hofbauer,* the Supreme Court held that, pursuant to Fed. R. Civ. P. 10(c), exhibits to a federal habeas petition are considered part of the petition itself. *Id.* The application of Rule 10(c) to habeas petitions as articulated in *Dye v. Hofbauer* does not conflict with Rule 2(c) of the Rules Governing 2254 Cases in the United States District Courts. The SAP complies with Rule 2(c), in that it sufficiently specifies the grounds for relief and the facts supporting each ground. Accordingly, this Court finds that the exhibits incorporated by reference in the SAP, which were appropriately filed in this habeas action, are considered part of the SAP itself. Petitioner's incorporation of documents within the state court

1  record is appropriate, and this Court declines respondents' invitation to dismiss the SAP because of
2  the instances of incorporation by reference.

3  **B. AEDPA Statute of Limitations and Relation-Back**

4      Respondents assert that the first amended petition and second amended petition were
5  untimely filed, and that unless the claims in the second amended petition relate back to the claims in
6  the original petition, they are time-barred.  Federal habeas petitions ordinary must be filed within one
7  year of the "date on which the judgment became final by the conclusion of direct review or the
8  expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The parties do not
9  dispute that petitioner timely commenced this action by filing his original petition on March 8, 2012.
10  *See* 28 U.S.C. § 2244(d).  Under Federal Rule of Civil Procedure 15, an amended pleading "relates
11  back" to the original pleading only if the acts described in the amended pleading are set forth in the
12  original pleading.  Fed. R. Civ. P. 15(c)(2).  An amended habeas petition only relates back if the
13  amended claims are tied to the "same core of operative facts" as alleged in the original petition.
14  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

15      In the motion to dismiss, respondents recite the AEDPA statute of limitations and the relation
16  back standard under *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  Respondents then, without analysis,
17  assert that the grounds raised in the second amended petition do not relate back to the original
18  petition and are therefore untimely.  (ECF No. 32, at pp. 8-9).  Respondents' motion to dismiss offers
19  no analysis on the relation back issue and merely offers the following conclusion:

20      Accordingly, any claims relying on a factual predicate that are not
    related in both time and type to the facts pled in the original petition
21      will not relate back and are time-barred.  As a result, if Redeker cannot
    establish that his claims relate back to the original petition, including
22      any claims Redeker seeks to incorporate by merely referencing
    portions of the state court record, this Court should dismiss them as
23      untimely.

24  (ECF No. 32, at p. 9).  Respondents' motion fails to provide any analysis demonstrating that any
25  particular ground of the second amended petition does not relate back to the original petition.  An
26

6

assertion that a claim is untimely is an affirmative defense. *Wood v. Milyard*, 132 S.Ct. 1826, 1832 (2012); *see also Randle v. Crawford*, 604 F.3d 1047, 1052 (9th Cir. 2010) (the statute of limitations for habeas petitions is an affirmative defense required to be raised in the first responsive pleading). The State has the burden of raising this defense with specificity in its responsive pleading. *See* Rule 5(c) of the Rules Governing 2254 Cases in the United States District Courts. In raising the affirmative defense of untimeliness because the second amended petition contains claims that do not relate back to the original petition, respondents had an obligation to explain which claim or claims do not relate back to the original petition. Respondents would apparently rely on this Court to guess at what claims they refer to when they conclude that the claims of the second amended petition do not relate back to the original petition. This Court denies respondents' motion to dismiss with respect to its conclusory argument that the second amended petition is untimely and fails to relate back to the original petition. This action shall proceed on the second amended petition.

### C. Exhaustion of Claims

Respondents argue that several grounds of the second amended petition were not exhausted in the state courts. A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his

7

1   federal habeas claim is based. *Bland v. California Dept. Of Corrections,* 20 F.3d 1469, 1473 (9th Cir.
2   1994). To satisfy exhaustion, each of petitioner's claims must have been previously presented to the
3   Nevada Supreme Court, with references to a specific constitutional guarantee, as well as a statement
4   of facts that entitle petitioner to relief. *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2002). New
5   allegations or factual allegations that do not fundamentally alter the claim presented to the state
6   courts do not render a claim unexhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

7           **1. Ground 1**

8           In the second amended petition, at Ground 1, petitioner alleges that his sentence is invalid
9   under state and federal constitutional guarantees of due process, equal protection, prohibition against
10  double jeopardy, and a reliable sentence, because the trial court refused to strike the aggravating
11  circumstance that the killing was committed "by a person under sentence of imprisonment, " which
12  was contained within the State's notice to seek the death penalty. (ECF No. 28, at pp. 9-10).

13          Petitioner presented a corresponding claim to the Nevada Supreme Court in his opening brief
14  on direct appeal. (Exhibit 152, at pp. 16-37). Respondents argue that, in state court, petitioner failed
15  to present a federal claim for relief because he argued that the state district court erred in not striking
16  the notice of intent to seek the death penalty because it failed to satisfy the requirements of Nevada
17  Supreme Court Rule 250. Thus, respondents contend that petitioner failed to properly federalize his
18  claim, rendering the claim unexhausted.

19          A petitioner must alert the state courts to the fact that he is asserting a federal claim in order
20  to fairly present the legal basis of the claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per
21  curium); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). In the Ninth Circuit, a petitioner
22  must make the federal basis of his claim explicit by either referencing specific provisions of the
23  federal constitution or statutes, or by citing to federal case law. *See Castillo*, 399 F.3d at 999.

24          In the opening brief to the Nevada Supreme Court, petitioner's claim that the notice to seek
25  the death penalty failed to comply with Nevada Supreme Court Rule 250 was only one of several

26

8

1   arguments presented to the Nevada Supreme Court. (Exhibit 152, at pp. 30-31). Petitioner's

2   complete argument presented to the Nevada Supreme Court on the issue of the notice to seek the

3   death penalty "by a person under sentence of imprisonment" aggravating factor included the

4   contention that his state and federal constitutional rights were violated by the district court's refusal

5   to strike the aggravating factor. (Exhibit 152, at pp. 16-37). Petitioner's arguments included citation

6   to several federal cases and to the federal constitution. (*Id.*). Moreover, if the highest state court

7   considers the merits of a claim, then exhaustion is satisfied. *See Cooper v. Neven*, 641 F.3d 322, 331

8   (9th Cir. 2011); *see also Chambers v. McDaniel*, 549 F.3d 1191, 1195-96 (9th Cir. 2008) (petitioner

9   exhausted claims even though Nevada Supreme Court denied the petition in a footnote, by stating

10  simply that the petition and documents filed were considered). The Nevada Supreme Court's order

11  of affirmance in the instant case contains a footnote indicating that the Court considered petitioner's

12  challenge to the state district court's refusal to strike the State's notice of intent to seek the death

13  penalty. (Exhibit 159, at pp. 1-2, n.1)

14        Respondents also argue that Ground 1 of the federal petition alleges that petitioner's rights

15  under the Double Jeopardy Clause were violated, but petitioner never presented such a claim to the

16  Nevada Supreme Court. In the opposition, petitioner does not specifically address the Double

17  Jeopardy Clause claim. On review of the state court record, it appears that petitioner never raised a

18  claim to the Nevada Supreme Court for violation of the Double Jeopardy Clause. (Exhibit 152).

19  Accordingly, the Double Jeopardy Clause claim within Ground 1 is unexhausted, but the remainder

20  of Ground 1 is exhausted.

21        **2. Ground 3**

22        In Ground 3 of the second amended petition, petitioner claims that the trial court admitted

23  evidence of extraneous bad acts in violation of his right to a fair trial, right of confrontation, and

24  right to due process. (ECF No. 28, at pp. 12-13). Petitioner contends that the trial court improperly

25  admitted evidence that petitioner was previously convicted of arson of his own unoccupied home,

26

1   that he made threatening remarks about the victim to third parties, and that he made

2   inappropriate/threatening remarks about petitioner's stepdaughter Brooke. (*Id.*, at p. 12).

3       Petitioner presented a corresponding claim to the Nevada Supreme Court in his opening brief

4   on direct appeal. (Exhibit 152, at pp. 42-51). Petitioner's arguments included the contention that his

5   state and federal constitutional rights were violated by the district court's admission of other bad act

6   evidence. (*Id.*). If the highest state court considers the merits of a claim, then exhaustion is satisfied.

7   *See Cooper*, 641 F.3d at 331; *see also Chambers*, 549 F.3d at 1195-96. The Nevada Supreme

8   Court's order of affirmance indicates that the Court considered petitioner's statutory and

9   constitutional challenges to the state district court's refusal to strike the State's notice of intent to

10   seek the death penalty. (Exhibit 159, at pp. 10-14). Ground 3 of the second amended habeas petition

11   is exhausted.

12       **3. Ground 4**

13       In Ground 4 of the second amended petition, petitioner asserts that his constitutional rights

14   under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution were violated

15   when the trial court admitted evidence from his home and car obtained without a warrant. (ECF No.

16   28, at pp. 13-16). Petitioner presented a corresponding claim to the Nevada Supreme Court in his

17   opening brief on direct appeal, arguing that admission of such evidence violated his federal

18   constitutional rights. (Exhibit 152, at pp. 51-57). Respondents argue that the portion of Ground 4 of

19   the federal petition that asserts a violation of the Fifth Amendment is unexhausted because petitioner

20   did not raise a Fifth Amendment claim regarding the admission of items seized from his home and

21   car.

22       The claim raised in the opening brief regarding the admission of evidence taken from

23   petitioner's home and car was a Fourth Amendment search and seizure claim, as applied to the State

24

25

26

1    of Nevada through the Fourteenth Amendment.[3] (Exhibit 152, at pp. 51-57). Petitioner specifically
2    referenced the Fourth Amendment to the United States Constitution, and cited federal case law
3    concerning Fourth Amendment search and seizure. (*Id.*). Nowhere in the discussion of the
4    admission of the items seized from petitioner's home and car did petitioner mention the Fifth
5    Amendment. (*Id.*). Instead, the Fifth Amendment was invoked in a separate claim within the
6    opening brief, which asserted that petitioner's Fifth Amendment right against self-incrimination was
7    violated when police officers elicited petitioner's statements without a *Miranda* warning and because
8    his statements were not freely and voluntarily given. (*Id.*, at pp. 61-65). Because petitioner's claim
9    regarding the admission of evidence taken from his home and car was raised as a Fourth Amendment
10   search and seizure issue when he presented it to the Nevada Supreme Court, and was not raised as a
11   Fifth Amendment violation, petitioner's reference to the Fifth Amendment in Ground 4 of the federal
12   petition is unexhausted. *Castillo*, 399 F.3d at 999 (petitioner must make the federal basis of his
13   claim explicit by either referencing specific provisions of the federal constitution or statutes, or by
14   citing to federal case law). Ground 4 of the second amended petition is exhausted as to the Fourth
15   and Fourteenth Amendment search and seizure claim, but unexhausted as to the Fifth Amendment
16   claim.

17              **4. Ground 6**

18        Petitioner alleges that his constitutional rights were violated when the trial court erroneously
19   admitted post-it notes found in his home. (ECF No. 28, at p. 20). Petitioner alleges a violation of his
20   "right to be free of unlawful searches and seizures, his right to confrontation, and his right to due
21   process as guaranteed by Amendments Four, Five, Six, and Fourteen of the United States
22   Constitution." (*Id.*). Petitioner presented a claim regarding the admission of the post-it notes to the
23   Nevada Supreme Court in his opening brief on direct appeal. (Exhibit 152, at pp. 66-67).

24

25        [3] The Fourth Amendment is made applicable to the states by the Fourteenth Amendment of the
     United States Constitution. *Mapp v. Ohio*, 367 U.S. 643 (1961).
26

                                                    11

1    Respondents argue that Ground 6 is unexhausted because the only federal constitutional
2    claim that petitioner presented to the Nevada Supreme Court was a Sixth Amendment Confrontation
3    Clause claim.  Indeed, in the opening brief, petitioner argued that the admission of a manilla
4    envelope of post-it notes recovered from his home violated the Sixth Amendment Confrontation
5    Clause, as applied to the State of Nevada by the Fourteenth Amendment. (Exhibit 152, at p. 66).
6    There is no reference to the Fourth or Fifth Amendments, nor was there reference to the Due Process
7    Clause. (*Id.*). Because petitioner's claim regarding the admission of the manilla envelope of post-it
8    notes recovered from his home was raised solely as a Sixth Amendment Confrontation Clause issue
9    when he presented it to the Nevada Supreme Court, to the extent petitioner invokes the Fourth
10   Amendment, Fifth Amendment, or Due Process Clause in his federal petition, it is unexhausted.
11   *Castillo*, 399 F.3d at 999 (petitioner must make the federal basis of his claim explicit by either
12   referencing specific provisions of the federal constitution or statutes, or by citing to federal case law).
13   Ground 6 of the second amended petition is exhausted as to the Sixth Amendment Confrontation
14   Clause claim, but is unexhausted as to the Fourth Amendment, Fifth Amendment, and Due Process
15   Clause claims.

16        **5. Ground 11**

17        In Ground 11, petitioner alleges that his counsel failed to take reasonable steps to raise issues
18   regarding website postings made by jurors in his case, and this violated his constitutional rights to
19   the effective assistance of counsel, due process, and the right to trial by an impartial jury. (ECF No.
20   28, at pp. 25-26). Respondents argue that Ground 11 was never raised in the state courts.
21   Respondents are incorrect.  Petitioner raised a corresponding claim in the memorandum of points
22   and authorities to his post-conviction habeas petition filed in state district court (Exhibit 175, at pp.
23   7-11), as well as in his opening brief to the Nevada Supreme Court on appeal from the denial of his
24   post-conviction state habeas petition (Exhibit 199, at pp. 10-15). The Nevada Supreme Court
25   considered and denied relief on the claim of ineffective assistance of counsel regarding the website
26

postings made by jurors in the case. (Exhibit 204, at p. 3). Petitioner has exhausted Ground 11 of the second amended petition.

### 6. Ground 13

In Ground 13, petitioner asserts that counsel were ineffective for failing to properly litigate the Fourth Amendment and *Miranda* issues in his case. (ECF No. 28, at p. 29). Petitioner presented a corresponding claim to the Nevada Supreme Court in his opening brief on appeal from the denial of his post-conviction habeas petition, arguing that counsel was ineffective for failing to seek further review on a writ of mandamus to the Nevada Supreme Court when the trial court denied his motion to suppress petitioner's statements to police and the evidence obtained from petitioner's house. (Exhibit 199, at pp. 17-22).

In Ground 13, petitioner asserts that counsel was ineffective for failing to properly litigate the claims set forth in Grounds 4, 5, and 6 of the second amended petition. Ground 4 alleges that the trial court violated petitioner's constitutional rights when it admitted evidence obtained pursuant to a warrantless search of petitioner's property. Ground 5 alleges that the trial court erroneously admitted petitioner's statements to the police and confession, in violation of *Miranda* and the Fifth Amendment right to remain silent. Ground 6 alleges that the trial court erroneously admitted post-it notes found in petitioner's home. (ECF No. 28, at pp. 13-20).

Respondents argue that petitioner's assertion in Ground 13 that counsel was ineffective for failing to file a mandamus petition challenging the admissibility of the post-it notes was never presented to the Nevada Supreme Court and therefore is unexhausted. Petitioner's opening brief on appeal from the denial of his post-conviction habeas petition argued that counsel was ineffective for failing to seek further review by filing a writ of mandamus when the trial court denied his motion to suppress petitioner's statements to police and the evidence obtained from petitioner's house. (Exhibit 199, at pp. 17-22). The opening brief alleges that counsel "did not seek further review when the lower court denied [the motion] to suppress [petitioner's] recorded statement and the evidence

13

1    obtained from the house." (*Id.*, at p. 20).  Petitioner's opening brief does not specify the individual
2    items of evidence obtained from his house to which the claim of ineffective assistance of counsel
3    applies, and this Court will not limit the petition to exclude the post-it notes found in petitioner's
4    house.  Ground 13 of the second amended petition is exhausted.

5                    **7. Ground 15**

6            In Ground 15 of the second amended petition, petitioner alleges that cumulative error
7    warrants reversal of his conviction under the Fifth, Sixth, and Fourteenth Amendments.  (ECF No.
8    28, at p. 31).  Respondents argue that when petitioner presented the cumulative error claim on direct
9    appeal, he did so in a manner that did not inform the Nevada Supreme Court that he was raising the
10   issue based on federal constitutional authority.  In his opening brief on direct appeal, petitioner
11   alleged that "cumulative error warrants reversal of Arie's conviction under the Fifth, Sixth, and
12   Fourteenth Amendments to the U.S. Constitution as well as Art 1., Sect. 8 of the Nevada
13   Constitution."  (Exhibit 152, at p. 76).  The Court finds that petitioner sufficiently federalized his
14   cumulative error claim by citing directly to the Fifth, Sixth, and Fourteenth Amendments to the
15   United States Constitution.  (*Id.*).  Ground 15 of the second amended petition is exhausted.

16                  **8. Exhibits 208-220 and Exhaustion**

17           Respondents argue that Exhibits 208-220 to the second amended petition were submitted by
18   petitioner with no indication that they were ever admitted or considered as evidence in state court.
19   The issue of exhaustion concerns claims, not exhibits.  New allegations or factual allegations that do
20   not fundamentally alter the claim presented to the state courts do not render a claim unexhausted.
21   *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).  It therefore follows that new exhibits do not
22   necessarily render a claim unexhausted.  There may be other reasons to exclude exhibits from
23   consideration in litigating the merits of a federal habeas petition when such evidence was not
24   previously presented to the state courts.  *See Cullen v. Pinholster*, 131 S.Ct. 1388 (2011) (federal
25   habeas review of a state court proceeding is generally limited to the record that was before the state
26

                                                      14

court).  However, respondents have cited no authority that filing exhibits in a federal habeas action impacts whether claims in the federal petition are exhausted.  Therefore, the Court declines to find that Exhibits 208-220 render any portion of the second amended petition unexhausted.

### 9. Petitioner's Options Regarding Unexhausted Claims

A federal court may not entertain a habeas petition unless the petitioner has exhausted available and adequate state court remedies with respect to all claims in the petition. *Rose v. Lundy*, 455 U.S. 509, 510 (1982).  A "mixed" petition containing both exhausted and unexhausted claims is subject to dismissal. *Id.*  In the instant case, the Court finds that the following grounds of the second amended petition are unexhausted: (1) the Double Jeopardy Clause claim within Ground 1 is unexhausted, but the remainder of Ground 1 is exhausted; (2) Ground 4 is exhausted as to the Fourth Amendment search and seizure, but unexhausted as to the Fifth Amendment claim; (3) Ground 6 is exhausted as to the Sixth Amendment Confrontation Clause claim, but is unexhausted as to the Fourth Amendment, Fifth Amendment, and Due Process Clause claims.  Because the Court finds that the petition is a "mixed petition," containing both exhausted and unexhausted claims, petitioner has these options:

1.      He may submit a sworn declaration voluntarily abandoning the unexhausted claims in his federal habeas petition, and proceed only on the exhausted claims;

2.      He may return to state court to exhaust his unexhausted claims, in which case his federal habeas petition will be denied without prejudice; or

3.      He may file a motion asking this court to stay and abey his exhausted federal habeas claims while he returns to state court to exhaust his unexhausted claims.

*See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002); *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).  Petitioner shall notify the Court of his choice of the options given above, as outlined at the conclusion of this order.

/ / / / / / / /

/ / / / / / / /

15

1

## D. Argument that Grounds 4 & 5 are Barred by *Stone v. Powell*

2      Respondents argue that Ground 4 and a portion of Ground 5 are barred by *Stone v. Powell*,
3  428 U.S. 465, 495 (1976).  Where a state has provided a defendant with a full and fair opportunity to
4  litigate a Fourth Amendment claim, "a state prisoner may not be granted federal habeas corpus relief
5  on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his
6  trial." *Stone v. Powell*, 428 U.S. 465, 495 (1976); *see Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899
7  (9th Cir. 1993).  The federal court will consider a Fourth Amendment claim only if petitioner can
8  affirmatively demonstrate that the state court did not afford him a full and fair opportunity to litigate
9  his Fourth Amendment claim.  *See Stone v. Powell*, 428 U.S. at 494; *Anderson v. Calderon*, 232 F.3d
10  1053, 1068 (9th Cir. 2000), *abrogated on other grounds by Osband v. Woodford*, 290 F.3d 1036,
11  1043 (9th Cir. 2002); *Woolery v. Arave*, 8 F.3d 1325, 1326-27 (9th Cir. 1993).

12          ### 1. Ground 4

13      In Ground 4, petitioner asserts that the trial court erred in admitting evidence that was gained
14  through the warrantless search of his property, in violation of petitioner's Fourth Amendment right to
15  be free of unreasonable search and seizure.  (ECF No. 28, at pp. 13-16).  Respondents seek dismissal
16  of Ground 4 as barred by rule announced in *Stone v. Powell*.

17      In the opposition, petitioner asserts that "he did not have a 'full and fair opportunity to
18  litigate' the issue in the state courts, and specifically, he received ineffective assistance from his
19  counsel." (ECF No. 39, at p. 9).  Petitioner cites to *Kimmelman v. Morrison*, 477 U.S. 365 (1986)
20  for the proposition that where an error is attributable to counsel's failure to present a Fourth
21  Amendment claim in the state court, the Fourth Amendment claim is cognizable in federal court.
22  Petitioner misstates the holding of *Kimmelman*.  *Kimmelman* does not establish that a claim of
23  ineffective assistance of counsel will set aside the rule in *Stone v. Powell* and thereby permit a
24  federal court to consider the merits of a Fourth Amendment claim.

25

26

1    Rather, the Supreme Court held in *Kimmelman* that *Stone's* restriction on federal habeas

2   review of Fourth Amendment claims does not bar the federal court from considering a Sixth

3   Amendment claim that counsel was ineffective for failing to competently raise a meritorious Fourth

4   Amendment claim in criminal proceedings by filing a suppression motion or other means.

5   *Kimmelman*, 477 U.S. at 383.  In reaching this conclusion, the Supreme Court emphasized the

6   distinction between a Fourth Amendment claim based on the judicially-created remedy of the

7   exclusionary rule, and a Sixth Amendment claim of ineffective assistance of counsel.  *Id.* at pp. 374-

8   377.  The Court recited the *Strickland* ineffective assistance of counsel standard: a petitioner must

9   show that counsel's representation fell below an objective standard of reasonableness, and that, but

10   for counsel's unprofessional errors, there is a reasonable probability the result of the proceeding

11   would have been different.  *Kimmelman*, 477 U.S. at 375 (citing *Strickland v. Washington*, 466 U.S.

12   688, 694 (1984)).  The Court in *Kimmelman* then explained the distinction between a Fourth

13   Amendment claim and a Sixth Amendment claim of ineffective assistance of counsel for failing to

14   litigate a Fourth Amendment issue:

15           Where defense counsel's failure to litigate a Fourth Amendment claim
              competently is the principal allegation of ineffectiveness, the defendant
16           must also prove that his Fourth Amendment claim is meritorious and
              that there is a reasonable probability that the verdict would have been
17           different absent the excludable evidence in order to demonstrate actual
              prejudice.  Thus, while respondent's defaulted Fourth Amendment
18           claim is one element of proof of his Sixth Amendment claim, *the two
              claims have separate identities and reflect different constitutional*
19           *values.*

20   *Id.* at 375 (emphasis added).  That this distinction is not lost on petitioner is demonstrated by the fact

21   that the second amended petition contains not only a Fourth Amendment claim regarding the

22   admission of evidence obtained without a warrant (Ground 4), but also contains a separate claim of

23   ineffective assistance of counsel for failure to properly litigate the Fourth Amendment claims in state

24   court (Ground 13).  (ECF No. 28, at pp. 13-16, and p. 29).  Ground 13 of the second amended

25

26

17

1    petition proceeds and affords petitioner the right to argue his claim of ineffective assistance of

2    counsel for failure to properly litigate the Fourth Amendment claims in state court.

3        As to Ground 4 of the second amended petition, petitioner has not shown that he lacked a full

4    and fair opportunity to litigate his Fourth Amendment claim in state court. To the contrary, the state

5    court record indicates that petitioner was given a full and fair opportunity to litigate his Fourth

6    Amendment claim before the state courts. Petitioner filed a motion to suppress the physical evidence

7    obtained during the warrantless search of his home. (Exhibit 25). The state district court denied the

8    motion to suppress, and petitioner raised the issue on direct appeal in his opening brief. (Exhibit

9    152, at pp. 51-57). The Nevada Supreme Court considered the issue in its opinion and denied relief,

10   affirming petitioner's conviction. (Exhibit 159, at pp. 2-5). The Fourth Amendment claim raised in

11   Ground 4 of the second amended petition was fully litigated in the state court below. Because

12   petitioner had the opportunity to fully and fairly litigate the Fourth Amendment claim that he now

13   presents in Ground 4 his federal habeas petition, this Court is precluded from reviewing that claim

14   and it will be dismissed. *Stone v. Powell,* 428 U.S. at 495.

15          **2. Ground 5**

16       In Ground 5, petitioner alleges that the trial court erroneously admitted his statements to

17   police and his confession to Detective Hardy when there was no *Miranda* warning given until after

18   he confessed. Petitioner asserts that the admission of his statements and confession not only violated

19   his Fifth Amendment right against self-incrimination, but also violated his Fourth Amendment right

20   against unreasonable search and seizure. (ECF No. 28, at pp. 16-19).

21       Respondents move to dismiss the Fourth Amendment claim within Ground 5, pursuant to

22   *Stone v. Powell,* 428 U.S. 465, 495 (1976). Petitioner argues that the Fourth Amendment claim is

23   cognizable "for the reasons explained in the previous section," which is reasoning that this Court has

24   rejected. Petitioner has not demonstrated that he lacked a full and fair opportunity to litigate his

25   Fourth Amendment claim concerning his statements to police and confession in state court. The

26

1   state court record indicates that petitioner was given a full and fair opportunity to litigate his Fourth
2   Amendment claim before the state courts. Petitioner filed a motion to suppress his statements and
3   confession to the police. (Exhibit 28). The state district court denied the motion to suppress, and
4   petitioner raised the issue on direct appeal in his opening brief. (Exhibit 152, at pp. 57-66). The
5   Nevada Supreme Court considered the issue in its opinion and denied relief, affirming petitioner's
6   conviction. (Exhibit 159, at pp. 5-10). The Fourth Amendment claim raised in Ground 5 of the
7   second amended petition was fully litigated in the state court below. Because petitioner had the
8   opportunity to fully and fairly litigate the Fourth Amendment claim that he now presents in Ground 5
9   of his federal habeas petition, this Court is precluded from reviewing that claim and it will be
10  dismissed. *Stone v. Powell,* 428 U.S. at 495. However, the remaining constitutional claims within
11  Ground 5 are not barred and shall proceed.

12      **E. Procedural Default Arguments Concerning Ground 14**

13          Respondents argue that Ground 14 was procedurally defaulted in state court and the claim is
14  procedurally barred in this federal habeas corpus proceeding. In *Coleman v. Thompson,* 501 U.S.
15  722 (1991), the United States Supreme Court held that a state prisoner's failure to comply with the
16  state's procedural requirements in presenting his claims bars him from obtaining a writ of habeas
17  corpus in federal court by the adequate and independent state ground doctrine. *Coleman,* 501 U.S. at
18  731-32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas
19  petitioner who has failed to meet the State's procedural requirements for presenting his federal
20  claims has deprived the state courts of an opportunity to address those claims in the first instance.").
21  Where such a procedural default constitutes an adequate and independent state ground for the denial
22  of habeas corpus relief, the default may be excused only "if a constitutional violation has probably
23  resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for
24  the default and prejudice resulting from it. *Murray v. Carrier,* 477 U.S. 478, 496 (1986).

25

26

In Ground 14, petitioner claims that trial counsel was not qualified to handle a capital murder trial at the time he undertook representation as petitioner's trial counsel.[4] Petitioner claims that his trial counsel did not meet the minimum qualifications required to handle a capital murder trial pursuant to Nevada Supreme Court Rule 250. Petitioner alleges that this violated his right to the effective assistance of counsel and due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (ECF No. 28, at pp. 30-31). Petitioner raised this same claim in his post-conviction state habeas petition and in his opening brief on appeal from the denial of the petition. (Exhibit 174, at p. 7; Exhibit 175, at pp. 14-15; Exhibit 199, at pp. 8-10).

On appeal from the denial of petitioner's state habeas petition, the Nevada Supreme Court cited NRS 34.810(1)(b), and ruled: "Appellant's claim could have been raised on direct appeal and was therefore procedurally barred absent a demonstration of good cause and actual prejudice." (Exhibit 204, at p. 3). The Nevada Supreme Court then determined that petitioner failed to show good cause to excuse the procedural default. (*Id.*, at p. 5). The Nevada Supreme Court made a ruling that "appellant fails to demonstrate that trial counsel was deficient because, as appellant acknowledges, counsel did inform both the justice court and the district court that the was not death-qualified. Appellant fails to demonstrate that he was prejudiced because counsel became death-qualified prior to appellant's trial, and appellant was acquitted of first-degree murder and thus ultimately did not face the death penalty." (*Id.*).

Petitioner argues that the procedural rule invoked by the Nevada Supreme Court was neither adequate nor independent. Petitioner argues that his claim should not have fallen within the scope of NRS 34.810(1)(b) as a claim that should have been raised on direct appeal, because his claim is one ineffective assistance of counsel, which is appropriately raised for the first time during state post-conviction proceedings. Petitioner cites several cases demonstrating that the Nevada Supreme Court

---

[4] Although the State filed a notice of intent to seek the death penalty, the jury returned a verdict of second-degree murder and petitioner was not sentenced to death. (Exhibits 7, 137, 139, 140).

1   has repeatedly held that claims of ineffectiveness of counsel should not be raised on direct appeal,
2   but instead should be reserved for a post-conviction petition. *Pellegrini v. State*, 34 P.3d 519, 534
3   (Nev. 2001); *Ewell v. State*, 785 P.2d 1028, 1030 (Nev. 1989); *Corbin v. State*, 892 P.2d 580, 582
4   (Nev. 1995); *McKague v. Whitley*, 912 P.2d 255, 258 (Nev. 1996). Petitioner argues that "[t]o the
5   extent the bar had anything to do with the Court's perception of the merits of this ineffectiveness
6   claim, it was also not 'independent' of federal law." (ECF No. 30, at p. 13, n.5). Petitioner further
7   asserts that, assuming there was a procedural default, there is cause and prejudice to excuse the
8   procedural default based on the ineffective assistance of counsel in failing to raise this ground on
9   direct appeal.
10          This Court construes petitioner's claim in Ground 14 to encompass a Sixth Amendment
11   claim of ineffective assistance of counsel. Although the Nevada Supreme Court cited NRS
12   34.810(1)(b), and stated that "appellant's claim could have been raised on direct appeal and was
13   therefore procedurally barred absent a demonstration of good cause and actual prejudice," the
14   Nevada Supreme Court also ruled that "appellant fails to demonstrate that trial counsel was deficient
15   because, as appellant acknowledges, counsel did inform both the justice court and the district court
16   that the was not death-qualified. Appellant fails to demonstrate that he was prejudiced because
17   counsel became death-qualified prior to appellant's trial, and appellant was acquitted of first-degree
18   murder and thus ultimately did not face the death penalty." (Exhibit 204, at p. 3). The analysis by
19   the Nevada Supreme Court appears to be interwoven with the federal constitutional issue of whether
20   petitioner received ineffective assistance of counsel under the Sixth Amendment. *See Strickland v.*
21   *Washington,* 466 U.S. 668 (1984) (A petitioner claiming ineffective assistance of counsel has the
22   burden of demonstrating that counsel's performance was unreasonably deficient and that the
23   deficient performance prejudiced the defense.). A state court's decision is not "independent" if the
24   application of the state's default rule depends on the consideration of federal law. *Park v. California*,
25   202 F.3d 1146, 1152 (9th Cir. 2000). *See also Coleman*, 501 U.S. at 735 (decision not independent
26

21

1   when the state court's decision "fairly appears to rest primarily on federal law, or to be interwoven

2   with federal law") (internal quotation and citation omitted).  Ground 14 of the second amended

3   petition is not procedurally barred from consideration by this Court, and the parties are directed to

4   address the merits of Ground 14 in the answer and reply.

5   ## F.  Arguments Regarding Cognizability of Federal Grounds

6       Respondents argue that Grounds 1, 3, and 14 of the second amended petition should be

7   dismissed for failure to state cognizable federal habeas corpus claims.  A state prisoner is entitled to

8   federal habeas relief only if he is being held in custody in violation of the constitution, laws, or

9   treaties of the United States.  28 U.S.C. § 2254(a).  Pursuant to Rule 2(c) of the Rules Governing

10  Section 2254 Cases, a federal habeas petition must specify all grounds for relief and "state the facts

11  supporting each ground."  Unless an issue of federal constitutional or statutory law is implicated by

12  the facts presented, the claim is not cognizable under federal habeas corpus.  *Estelle v. McGuire*, 502

13  U.S. 62, 68 (1991).

14      ### 1. Ground 1

15      Petitioner alleges that his sentence is invalid under state and federal constitutional guarantees

16  of due process, equal protection, prohibition against double jeopardy, and a reliable sentence,

17  because the trial court refused to strike the aggravating circumstance that the killing was committed

18  "by a person under sentence of imprisonment, " which was contained in the State's notice to seek the

19  death penalty.  (ECF No. 28, at pp. 9-10).  Respondents argue that Ground 1 merely alleges a

20  violation of state law, and is therefore does not state a cognizable claim for federal habeas relief.

21  Petitioner's claims in Ground 1 go beyond a mere allegation of a state law violation.  Petitioner

22  claims that the failure to strike the aggravating circumstance had consequences impacting his rights

23  under the United States Constitution.  Ground 1 states a cognizable claim for federal habeas corpus

24  relief.

25  / / / / / / / /

26

22

### 2. Ground 3

Petitioner claims that the trial court admitted evidence of extraneous bad acts in violation of his right to a fair trial, right of confrontation, and right to due process. (ECF No. 28, at pp. 12-13). Respondents argue that petitioner's allegations concern whether the state district court failed to conduct a hearing required by *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), or failed to give a limiting instruction under *Tavares v. State*, 117 Nev. 725, 30 P.3d 1128 (2001). Respondents assert that these are matters of state law, not federal law. The Ninth Circuit has held that, on habeas review, federal courts may not interfere with a state evidentiary ruling, but may consider only whether the evidence was so prejudicial that its admission violated fundamental due process and the right to a fair trial. *Fuller v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999); *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (1993). In Ground 3, petitioner alleges that the evidence admitted was prejudicial and violated his federal constitutional rights. Ground 3 states a cognizable claim for federal habeas corpus relief.

### 3. Ground 14

Petitioner claims that trial counsel was not qualified to handle a capital murder trial at the time he undertook representation as petitioner's trial counsel. Petitioner claims that his trial counsel did not meet the minimum qualifications required to handle a capital murder trial pursuant to Nevada Supreme Court Rule 250. Petitioner alleges that this violated his right to the effective assistance of counsel and due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (ECF No. 28, at pp. 30-31). Respondents argue that petitioner's claim that his attorney was not certified to appear as lead counsel in a capital murder trial is not derived from the Sixth Amendment of the United States Constitution, but rather, is derived from Nevada Supreme Court Rule 250. The Court declines to construe petitioner's claim as merely a matter of state law because, as pleaded, petitioner plainly alleges a violation of his Sixth Amendment right to counsel. In the reply brief, respondents argue that if Ground 14 is cognizable, then it is unexhausted. (ECF

1   No. 40, at p. 18).  The Court rejects this argument because petitioner's opening brief on appeal from

2   the denial of his post-conviction state habeas petition raises the issue under both Nevada Supreme

3   Court Rule 250 as well as the Sixth Amendment.  (Exhibit 199, at pp. 8-10).  Ground 14 states a

4   cognizable claim for federal habeas corpus relief.

5       **G. Arguments Regarding Mootness of Federal Grounds**

6           Respondents argue that Ground 1, a portion of Ground 2, and Ground 6 of the second

7   amended habeas petition are moot.  Article II, section 2 of the United States Constitution provides

8   that the "exercise of judicial power depends on the existence of a case or controversy." *Liner v.*

9   *Jafco, Inc.*, 375 U.S. 301, 306, n.3 (1964).  "The case or controversy requirement subsists through all

10   stages of federal judicial proceedings, trial and appellate, . . . the parties must continue to have a

11   personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-

12   78 (1990) (internal quotations omitted).  Mootness occurs when there is no longer a case or

13   controversy. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  In the habeas corpus context, a claim is moot

14   when a court cannot grant "any effectual relief whatever" in a petitioner's favor.  *See Calderon v.*

15   *Moore*, 518 U.S. 149, 150 (1996).

16       **1. Ground 1**

17           Petitioner alleges that his sentence is invalid under state and federal constitutional guarantees

18   of due process, equal protection, prohibition against double jeopardy, and a reliable sentence,

19   because the trial court refused to strike the aggravating circumstance that the killing was committed

20   "by a person under sentence of imprisonment, " which was contained in the State's notice to seek the

21   death penalty.  (ECF No. 28, at pp. 9-10).  Respondents argue that this claim is moot because, at

22   trial, the jury convicted petitioner of second-degree murder, "effectively acquitting petitioner of the

23   death penalty." (ECF No. 32, at p. 17).

24           First, the relief sought by petitioner in the challenged grounds of the second amended petition

25   is still available to him.  A state prisoner is entitled to federal habeas relief only if he is being held in

26

1  custody in violation of the constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

2  Petitioner remains incarcerated because of the judgment of conviction, and if successful on his

3  grounds for relief in the federal petition, the Court can issue a writ of habeas corpus to remedy the

4  alleged violations of the constitution. *See* 28 U.S.C. § 2254.

5       Second, specifically regarding Ground 1, the fact that petitioner was not convicted of first-

6  degree murder and sentenced to death does not render his claim moot. As pointed out in the

7  opposition, and pled in the second amended petition, the fact that petitioner was acquitted of first-

8  degree murder does not mean that he was unaffected by the error. If the trial court had stricken the

9  sole remaining aggravating factor, the trial would not have proceeded capitally. (ECF No. 39, at p.

10  16). Petitioner alleges in Ground 1 of the second amended petition that: "By allowing the state to

11  prosecute his case as a death penalty matter, the trial court deprived Mr. Redeker of the chance to

12  present his defense to a fair and impartial jury; one free of the biases engendered by a death-

13  qualification jury selection process. Mr. Redeker had to proffer his defense to a jury that was less

14  receptive to the presumption of innocence and hence, less receptive to his manslaughter claim."

15  (ECF No. 28, at p. 10). Respondents' argument regarding mootness is more accurately characterized

16  as an argument that petitioner's allegations of error did not affect the outcome of the trial. Such

17  issues are more appropriately raised in an answer addressing the merits of Ground 1.

18       **2. Part of Ground 2**

19       In Ground 2, petitioner alleges that his rights to a fair and impartial jury, a fair trial, and due

20  process were violated when the trial court imposed improper and arbitrary limitations on voir dire.

21  (ECF No. 28, at pp. 11-12). Respondents argue that the following allegations within Ground 2 are

22  moot: (1) the challenge to the trial court's denial of the defense's request to use a jury questionnaire;

23  (2) the challenge to trial court's limitations placed on the defense during voire dire that prevented the

24  defense from being able to "properly identify pro-death jurors and jurors who could not consider

25  mitigation," and (3) the challenge to the trial court's denial of motions to strike two jurors for cause,

26

1    which required petitioner to exercise peremptory strikes to those two jurors. (ECF No. 32, at p. 17,

2    citing ECF No. 28, at p. 11). Respondents argue that these portions are moot because the jury

3    acquitted petitioner of first-degree murder and did not sentence him to death. The cited portions of

4    Ground 2 are not moot because petitioner alleges that the improper composition of the jury may have

5    affected the guilt phase of the trial, even though the jury's second-degree murder verdict precluded a

6    death sentence. Again, respondents' argument regarding mootness is more accurately characterized

7    as an argument that petitioner's allegations of error did not affect the outcome of the trial. Such

8    issues are more appropriately raised in an answer addressing the merits of Ground 2.

9                    3.   Ground 6

10           Petitioner argues that the trial court violated his constitutional rights by admitting post-it

11   notes found in his home, which the prosecution used against him to show that he planned the killing

12   and weighed the "pros and cons" of taking the victim's life. (ECF No. 28, at p. 20). Respondents

13   argue that because the jury acquitted petitioner of first-degree murder, this claim is moot. Ground 6

14   is not moot, as the admission of the post-it notes were potentially relevant to the issue of whether

15   defendant acted with malice and intent, which is necessary to distinguish second-degree murder from

16   manslaughter. Respondents' argument regarding mootness is more accurately characterized as an

17   argument that petitioner's allegations of error did not affect the outcome of the trial. Such issues are

18   more appropriately raised in an answer addressing the merits of Ground 6.

19   **IV.  Conclusion**

20           **IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 32) the

21   second amended petition is **GRANTED IN PART AND DENIED IN PART**, as follows:

22           1.      The motion to dismiss the second amended petition based on petitioner's

23                   incorporation by reference to documents in the state court record is **DENIED.**

24           2.      The motion to dismiss the second amended petition as untimely is **DENIED.**

25

26

                                                    26

3.    The motion to dismiss the second amended petition based on the failure to exhaust state court remedies is **GRANTED in part and DENIED in part**, as follows:

- Ground 1 is exhausted, except for the Double Jeopardy claim.
- Ground 3 is exhausted.
- Ground 4 is exhausted as to the Fourth and Fourteenth Amendment search and seizure claim, but unexhausted as to the Fifth Amendment claim.
- Ground 6 is exhausted as to the Sixth Amendment Confrontation Clause claim, but is unexhausted as to the Fourth Amendment, Fifth Amendment, and Due Process Clause claims.
- Ground 11 is exhausted.
- Ground 13 is exhausted.
- Ground 15 is exhausted.
- Exhibits 208-220 do not render any portion of the second amended petition unexhausted.

4.    Ground 4 of the second amended petition is **DISMISSED WITH PREJUDICE** pursuant to *Stone v. Powell,* 428 U.S. 465, 495 (1976).

5.    The Fourth Amendment claim in Ground 5 of the second amended petition is **DISMISSED WITH PREJUDICE** pursuant to *Stone v. Powell,* 428 U.S. 465, 495 (1976).  However, the remaining claims within Ground 5 shall proceed.

6.    Respondents' motion to dismiss Ground 14 of the second amended petition as procedurally barred is **DENIED.**

7.    Respondents' motion to dismiss Grounds 1, 3, and 14 of the second amended petition for failure to state cognizable federal habeas corpus claims is **DENIED.**

8.    Respondents' motion to dismiss Ground 1, a portion of Ground 2, and Ground 6 of the second amended petition as moot is **DENIED.**

1      **IT IS FURTHER ORDERED** that petitioner shall have **thirty (30) days** from entry of this

2  Order to either: **(1)** inform this Court in a sworn declaration that he wishes to formally and forever

3  abandon the unexhausted grounds for relief in his federal habeas petition and proceed on the

4  exhausted grounds; **OR (2)** inform this Court in a sworn declaration that he wishes to dismiss this

5  petition without prejudice in order to return to state court to exhaust his unexhausted claims; **OR (3)**

6  file a motion for a stay and abeyance, asking this Court to hold his exhausted claims in abeyance

7  while he returns to state court to exhaust his unexhausted claims.  If petitioner chooses to file a

8  motion for a stay and abeyance, or seek other appropriate relief, respondents may respond to such

9  motion as provided in Local Rule 7-2.

10     **IT IS FURTHER ORDERED** that if petitioner elects to abandon his unexhausted grounds,

11  respondents shall have **thirty (30) days** from the date petitioner serves his declaration of

12  abandonment in which to file an answer.  The answer shall substantively address the merits of all

13  remaining grounds for relief in the second amended petition.

14     **IT IS FURTHER ORDERED** that if an answer is filed, petitioner shall have **thirty (30)**

15  **days** following service of respondents' answer in which to file a reply.  The reply shall respond to

16  the answer and substantively address the merits of all remaining grounds in the second amended

17  petition.

18     Dated this 11th day of March, 2014.

19

20

21  _____

ANDREW P. GORDON

22  UNITED STATES DISTRICT JUDGE

23

24

25

26

28